## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| **Michael W. Davidson** ) | |
| **SSN: XXX-XX-3867** ) | **CASE NO. 18-82270-CRJ11** |
| ) | |
| **Debtor.** ) | **CHAPTER 11** |
| ) | |

## DEBTOR'S DISCLOSURE
## STATEMENT DATED NOVEMBER 21, 2018

### INTRODUCTION

Michael W. Davidson, as Debtor-in-Possession ("Debtor"), filed a voluntary petition under Chapter 11 of Title 11, United States Code ("Bankruptcy Code" or "Code"), on July 31, 2018, in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

Debtor submits this Disclosure Statement dated November 21, 2018 ("Disclosure Statement"), in connection with his Chapter 11 Plan of Liquidation dated November 21, 2018 ("Plan") as required by 11 U.S.C. § 1125. The definitions in the Plan are incorporated by reference. Except where otherwise indicated herein or as defined in the Plan, the terms in this Disclosure Statement have been used as defined in the Bankruptcy Code. The Plan has been filed in the Bankruptcy Court contemporaneously with this Disclosure Statement.

Debtor provides this Disclosure Statement to all of his known creditors and parties in interest to disclose information to be determined by the Bankruptcy Court as adequate for said creditors and parties in interest to reach a reasonably informed decision in connection with the Plan.

The Disclosure Statement describes the circumstances giving rise to the filing of this case. This petition, summarizes the anticipated future of the Debtor, provides a liquidation analysis and summarizes the Plan. Great effort has been made to describe material matters fully and completely; however, no warranties can be made. Creditors and Interest Holders are urged to read the Plan carefully and are further urged to consult with their counsel in order to fully understand the Plan. The Plan is a legally binding document and is based on complex legal and financial considerations.

Section 1125 of the Bankruptcy Code requires that the Debtor, as a condition precedent to solicitation of acceptance of his Plan, submit a written Disclosure Statement. The purpose of this document is to set forth sufficient detail to allow each holder of a claim or interest of a particular Class to make an informed judgment about acceptance of the Plan. Prior to soliciting votes of

acceptance from Creditors, the Court must approve the Disclosure Statement.

## DISCLAIMER

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OF DEBTOR OR THE VALUE OF DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY PROPONENT EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR AT HEARD, ARY & DAURO, LLC, 303 WILLIAMS AVENUE, SUITE 921, HUNTSVILLE, ALABAMA 35801.

FOR VARIOUS REASONS, THE RECORDS OF PROPONENT PRIOR TO THE PREPARATION OF THIS PLAN HAVE NOT ALWAYS BEEN COMPLETE. THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS DISCLOSURE STATEMENT IS DEPENDENT UPON ACCOUNTING PERFORMED BY DEBTOR AND DEBTOR'S ACCOUNTANT. WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. NO KNOWN INACCURACIES ARE INCLUDED. WHILE EVERY EFFORT HAS BEEN MADE TO INSURE THAT THE ASSUMPTIONS ARE VALID, UNDER THE CIRCUMSTANCES, NEITHER DEBTOR, HIS ATTORNEY, NOR HIS ACCOUNTANT UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE PROJECTIONS.

A LIQUIDATION ANALYSIS HAS BEEN UNDERTAKEN OF SUBSTANTIALLY ALL OF THE DEBTOR'S PROPERTY. THE VALUES PLACED ON DEBTOR'S PROPERTY AND SUMMARIZED HEREIN ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUES OF THE PROPERTY OF DEBTOR AS OF THE TIME OF THE FILING OF THIS DISCLOSURE STATEMENT.

THE VALUES HEREIN MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF THE FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

## EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. However, a Debtor may also chose to liquidate his assets under Chapter 11 for the benefit of his creditors pursuant to a plan of liquidation. The Debtor's bankruptcy case was commenced on or about July 31, 2018 ("Petition Date") as a voluntary Chapter 11 bankruptcy case.

Confirmation of a Chapter 11 plan of liquidation requires either that all classes of claims and interests (entitled to vote) accept the plan or that the plan be accepted by the holders of at least

one impaired class of claims (not held by "insiders" within the meaning of the Bankruptcy Code) to satisfy the requirements of § 1129(b) of the Bankruptcy Code. A plan of liquidation must also be in the best interests of creditors and interest holders, which essentially means that the cash or other property to be distributed to creditors and interest holders may not be less than they would receive if all of the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

Acceptance by a class requires that more than one-half in number and at least two-thirds in amount of the total allowed claims who vote in that class vote in favor of the plan. So long as one class of non-insider impaired claims or interests accepts a plan, it need not be accepted by all classes. The Bankruptcy Court may confirm a plan pursuant to its "cramdown" powers under § 1129(b) of the Bankruptcy Code, if it does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class.

As is more fully described below, almost all creditors are impaired and a cramdown may be necessary to confirm the Plan over the objection of any dissenting class. The Plan Proponent believes that the Claims of Creditors of the Administrative Claims are unimpaired under the Plan. The claims of creditors in classes 1 through 3 are impaired. Section 1119(f) provides that a class that is not impaired under the Plan, and each holder of a claim or interest of such class, is conclusively presumed to have accepted the Plan. Solicitation of acceptances with respect to members of such Classes is not required.

Under Section 1121(e) of the Bankruptcy Code, only the Debtor may file a plan of liquidation before the expiration of 120 days from the date of the order for relief. If a plan has been filed, then the Debtor has 45 days from the filing of the plan to have it confirmed under the time provisions are extended under § 1121(e)(3). The exclusivity provisions of 11 U.S.C § 1121 has expired in this case.

## PROCEDURE FOR FILING PROOFS OF CLAIMS

The Bankruptcy Court established October 26, 2018, as the bar date for filing all Proof of Claims including governmental units. The Plan provides that Claims will be recognized only if evidenced by a timely filed Proof of Claim. A Proof of Claim is deemed "allowed" if it appears in the Debtor's schedules filed with the Bankruptcy Court and is not listed as disputed, contingent or unliquidated or is not disputed as part of the Plan or objected to by the Debtor pursuant to Rule 3007 of the Federal Bankruptcy Rules or is otherwise allowed by the Bankruptcy Court. The Debtor's schedules may be reviewed during regular business hours in the Office of the Clerk, United States Bankruptcy Court, Decatur, Alabama or in the office of Heard Ary & Dauro, LLC, 303 Williams Avenue, Suite 921 Huntsville, AL 35801, (256) 535-0817.

## VOTING PROVISIONS

Creditors holding Allowed Claims are entitled to vote to accept or reject Debtor's Plan. THE COURT WILL FIX A DATE BY WHICH ALL BALLOTS CONCERNING THE PROPOSED PLAN MUST BE FILED WITH THE COURT. ALL BALLOTS MUST BE RECEIVED BY SAID DATE BY THE COURT WITH COPIES TO THE OFFICES OF HEARD, ARY & DAURO, LLC, COUNSEL FOR DEBTOR, at 303 Williams Avenue, Suite 921

Huntsville, Alabama 35801. No ballots received by the Court after that date will be counted in determining whether the Plan should be confirmed. Even though a creditor may not vote or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of creditors and/or is confirmed by the Court.

Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a Claim or interest for voting purposes does not necessarily mean that the Claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any Claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

In order for the Plan to be deemed accepted by a Class of creditors holding Unsecured Claims, creditors that hold at least two-thirds (2/3) of the total dollar amount and more than one-half (1/2) of the total number of Allowed Claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. § 1129(b), the Court may confirm the Plan notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan in any given Class. Debtor intends to seek confirmation under 11 U.S.C. § 1129(b) in the event any Class of creditors rejects the Plan.

## CONFIRMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

1. <u>Confirmation Hearing</u>. Section 1128(a) of the Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of the Plan ("Confirmation Hearing"). Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan, regardless of whether it is entitled to vote.

2. <u>Objections to Confirmation</u>. The Court is expected to direct that any objections to the Plan are required to be made in writing in advance of the Confirmation Hearing. The hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the hearing. While the Plan Proponents expect that any hearing to consider objections to the confirmation of the Plan will be held in conjunction with the Confirmation Hearing, there can be no assurance that such will be the case.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY MADE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

3. <u>Requirements for Confirmation of the Plan</u>. At the Confirmation Hearing, the Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an order confirming the Plan. These requirements include:

   (A) <u>Feasibility of the Plan</u>. In order for the Plan to be confirmed, the Court must determine that a further liquidation of the Debtor is not likely to result following

       confirmation of the Plan. The Debtor believes that the Plan is feasible in that it pays money to satisfy existing Administrative, Priority and Unsecured Creditors.

(B)    <u>Fair and Equitable Requirement</u>. In order for the Plan to be confirmed, the Court must find that no junior Class will receive any distribution unless each senior Class consents or is paid in full or substantial property is contributed. The Plan Proponents believe that the Plan satisfies this requirement in as much as all Creditors will be paid the present value of their Claim.

## DESCRIPTION OF AVAILABLE ASSETS AND "LIQUIDATION VALUES" AND EQUITY

Schedules A and B of the Debtor's bankruptcy schedules identifies the Debtor's interests in real property and his personal property and household goods. These assets are described on Exhibit "A," which contains a summary of each asset and its liquidation values. The values set forth on Exhibit A are based upon the Debtor's best judgment as well as several objective measures of value such as the tax assessor statements and appraisals where available. Exhibit A indicates the equity in these properties available upon liquidation. Liquidation values are again based upon the Debtor's best judgment.

## ESTIMATES OF ADMINISTRATIVE EXPENSES AND CLAIMS ANALYSIS

The Debtor has incurred legal fees from Heard, Ary & Dauro, LLC in the approximate amount of $7,036 as of October 31, 2018. These fees are for legal services provided to the Debtor in connection with this Chapter 11 proceeding.

Additionally, the Debtor will incur legal fees owed to the law firm of Wolfe, Jones, Wolfe, Hancock, Daniel & South, L.L.C. These fees are for legal services provided to the Debtor for representing him on his appeal of the judgment which was entered against him in Madison County, Alabama.

The Debtor will continue to incur professional fees in this matter until such time as a final decree is entered in this case. The Debtor cannot currently calculate the total amount of professional fees he will incur in this matter with any degree of certainty that could reasonably be relied upon. All such fees, however, are subject to being approved by the Bankruptcy Court prior to payment.

Attached hereto is Exhibit "B" which is an analysis of: 1) the list of claims or claims register compiled by the Bankruptcy Court; and 2) the schedules showing unfiled claims. This exhibit also indicates whether a claim is allowed or disputed. <u>Exhibit B shall control and take precedence over any variance between Exhibit B and the schedules as to whether a claim is allowed or disputed</u>. The analysis found on Exhibit B is incorporated herein by reference.

## HISTORY OF THE DEBTOR

Mr. Davidson is a native of Cookeville, TN where he obtained a Bachelor of Science

degree from Tennessee Tech University. He was on the University Track and Field team where he was conference champion went on to become an All American while attending MTSU. He subsequently attended graduate school at Texas Tech University and received his Ph.D. in Chemistry. After completion of this degree Mr. Davidson went to New York to pursue a postdoctoral fellowship in Biochemistry at Mt. Sinai Research Hospital. He returned to Cookeville care for his mother who had been diagnosed with Stage IV breast cancer. During this time he taught chemistry obtained his Masters in Business Administration. In 1989 Mr. Davidson moved to Huntsville, Alabama after obtaining his MBA and his mother passing away. Mr. Davison has over 20 years' experience in working for government contractors providing technical support services to NASA and Redstone Arsenal contracts.

Currently, the Debtor serves as a care taker for his two sisters who have been diagnosed with lung and breast cancer. Mr. Davidson lost one sister to that cancer and he is taking care of his remaining sister while he is actively working for a job.

## EVENTS LEADING UP TO BANKRUPTCY

There are several factors that contributed to the Debtor filing for Chapter 11 bankruptcy. Initially, he left his prior employment due to a conflict with management which was amicably resolved. This coincided with his need to spend time caring for his two sisters who were ill. Then, pre-petition the Debtor was involved in litigation in the Circuit Court of Madison County in the matter styled *Alejandro Jorge Rezzonico v. Michael W. Davison, et al.,* Case No. 47-CV-2016-901275.00. That case ended with a judgment being entered against Mr. Davidson for $1,857,800. This matter is currently on appeal to the Alabama Supreme Court. There is no briefing schedule as of this time. It is anticipated that the appeal will take approximately 1 year to resolve. It was this judgment along with the strained financial condition as a result of being unemployed which lead to his filing chapter 11 bankruptcy.

## SUMMARY OF FINANCIAL CONDITION AND FEASIBILITY

As indicated by Debtor's Schedules, at the time the Debtor filed his Petition the Debtor had assets of approximately $1,042,655 and liabilities of $2,059,000. Consequently, the Debtor was insolvent at the time he filed his Petition.

Due to the Debtor serving as a caretaker for his sisters he is not currently gainfully employed. In light of this factor the Debtor proposes to liquidate his assets through the orderly sale and create a pool of funds from which to make payment to Allowed claims.

## SUMMARY OF PLAN AND TREATMENT OF CLASSES UNDER THE PLAN

The Plan will be summarized by incorporation of Article III: Treatment of Classes under the Plan, Article IV: Property of the Estate and Means of Execution of the Plan, and Article V: General Provisions of the Plan. Other provisions of the Plan are extremely important, especially Article I: Definitions. The Plan should be read in full.

**1.0 Secured Claims:**

    **1.01 Redstone Federal Credit Union**: This Class consists of the Allowed Secured Claim of Redstone Federal Credit Union ("RCFU") in the amount of $142,565.41 and is impaired. The Debtor is indebted to RCFU pursuant to a note and mortgage on real property located at 130 Shady Lane Langston, Alabama. The Debtor owns a one-half interest in this property. Pursuant to the Debtor's plan, he intends on selling his interest in this property via a public or private sale as approved by the United States Bankruptcy Court. Those proceeds will be first applied to pay off the debt owed to RFCU and the remainder will be used pursuant to this plan.

    **1.02 Lincoln Automotive Financial Services**: This Class consists of the Allowed Secured Claim in the amount of $57,970 held by Lincoln Automotive Financial Services ("Lincoln"), which is impaired. The Debtor is indebted to Lincoln pursuant to a vehicle loan for a 2017 Lincoln Navigator. Post-petition this Court approved the Debtor's monthly payment to Lincoln in the amount of $1,017.03 beginning in August, 2018 [Doc. 48]. This payment includes interest at the contract rate of 0.00%. Debtor will continue to pay this debt pursuant to the terms of this Court's prior Order until the debt is paid in full. Debtor estimates that the payment period is approximately 52 months. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**2.0 Non-Priority General Unsecured Claims**: This class consists of all allowed general unsecured claims which are impaired. The total amount of unsecured claims exceeds $1,857,621.42. The claims are of every kind and nature including claims arising from personal guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims, unsecured tax claims, and damages arising from or related to any liquidated or contingent claim. It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court. Holders of general unsecured claims without priority which are Allowed Claims as determined on or before the Effective Date of the Plan shall be paid on a pro-rata distribution, from the pool of funds created from the sale of the Debtor's assets.

**3.0 Interest Holder:** This class consists of the claim of Michael W. Davidson as the Debtor and Debtor in Possession. Mr. Davidson will not receive a distribution based on his Claim under the Plan until allowed claims in Classes 1 and 2 have been paid or are otherwise satisfied as provided for herein.

## TREATMENT OF UNCLASSIFIED ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**Administrative Expense Claims:**

    4.1    **Heard, Ary & Dauro, LLC:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan or as otherwise agreed to by the parties.

    4.2    **Wolfe, Jones, Wolfe, Hancock, Daniel & South, L.L.C**: This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan or as otherwise agreed to by the parties.

**Priority Claims:** The Debtor has not scheduled any claims entitled to Priority under 11 U.S.C. 507.

## THE CHAPTER 11 FILING AND POST-PETITION EVENTS

Debtor filed a voluntary petition under Chapter 11, together with his schedules and statement of financial affairs on July 31, 2018 in this district and division.

The Debtor has entered into a real estate sales contract with Joseph London III to sell the real property located at 2616 Memorial Parkway Huntsville, Alabama for $250,000. This Motion is pending before the Bankruptcy Court and is subject to the Court's approval. Post petition the lease on this premises expired on its own accord.

Post-petition the Debtor sought and received approval from the Court to make adequate protection payments to Lincoln Automotive Financial [Doc.48]. The Court has also approved the Debtor's retention of Wolfe Jones Wolfe Hancock and Daniel LLP to represent the Debtor on the appeal of the judgment entered against him in the case of *Alejandro Jorge Rezzonico v. Michael W. Davison, et al.,* Case No. 47-CV-2016-901275.00.

Post-petition the Debtor is involved in an adversary proceedings which involves the claims asserted by the plaintiff's in the above referenced case which is on appeal. In this adversary proceeding, the Plaintiffs seek to have their judgment declared non-dischargeable pursuant to 11 U.S.C. §523. The matter is styled *Alejandro Jorge Rezzonico v. Michael W. Davison,* A.P. No. 18-8105-CRJ. The Debtor denies all claims made by these Plaintiffs and has demanded strict proof thereof.

## ANALYSIS OF TRANSFERS WHICH MAY BE AVOIDABLE

Debtor's Statement of Financial Affairs, which has been previously filed with this Court identifies creditors to whom payments were made within ninety (90) days prior to filing bankruptcy. An analysis of these transfers indicates that there may be defenses to some or all of these payments in the form of ordinary course of business and simultaneous exchanges for value. Thus, the Debtor does not believe there would be a benefit to her bankruptcy estate to pursue such transfers.

## EXECUTORY CONTRACTS AND LEASES

Debtor is not aware of any executory contracts or unexpired leases to which it is a party. To the extent such exists it is to be rejected upon confirmation. All parties to any executory contract or lease rejected shall have thirty (30) days from the Confirmation Date in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be eligible to participate in distributions under this Plan.

## MEANS OF EXECUTION OF PLAN

Debtor will implement the terms of his Plan by selling those assets shown on Exhibit A attached hereto. The method of sale includes sale by private or public sale. For instance, the Debtor has filed a Motion for authority to sell the real property located at 2616 Memorial Parkway Huntsville, Alabama for $250,000 via a private sale. Because the Debtor jointly owns the majority of his real property with Dean Hudson, it is anticipated that Mr. Hudson is a potential purchaser. The process of each sale involves the valuation of each property to ensure that the property is being sold for the highest attainable price. The time within which all sales are to be completed is unknown at this point. All sales are subject to the final approval of the United States Bankruptcy Court.

## RETENTION, ENFORCEMENT, AND WAIVER OF CLAIMS

Pursuant to § 1123(b) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor, except claims waived, relinquished, or released in accordance with this Plan.

Notwithstanding the prior paragraph, no party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after Confirmation.

## FEDERAL INCOME TAX CONSEQUENCES

The tax consequences of the Plan to each party-in-interest will depend on the precise financial circumstances of that party. The Debtor makes no representation with respect to the effects of the taxation (State or Federal) on the creditors with respect to the treatment of their claims under the Plan, and no such representations are authorized. Any tax information contained herein is for informational purposes only. Parties-in-interest are urged to seek the advice of their own professional advisors should they have any questions with respect to any taxation issues.

The precise tax consequences to the Debtor resulting from his having filed Chapter 11 are not yet known. This may include, for example, income from discharge of indebtedness. The treatment by the Debtor of all allowed pre-petition tax claims shall be as set provided for herein. All taxes generated post-petition shall be paid by the reorganized Debtor as part of his ordinary course of business. As previously noted, the Debtor is current on all post-petition tax payments.

## POST CONFIRMATION LITIGATION AND OTHER MATTERS

As discussed above the Debtor is involved in a pending adversary proceeding. It is possible

that this adversary proceedings will continue post confirmation. This litigation could have an impact on the Debtor's ability to substantially consummate his Plan. As discussed, the Plaintiffs in that adversary proceeding seek to have their debt declared non-dischargeable as well as to deny the Debtor a general discharge. If they were to prevail, this may have an adverse impact on the Debtor's Plan, however, whether and to what extent such action by those plaintiffs would actually adversely impact the Debtor's Plan is speculative at this point.

Respectfully submitted on November 21, 2018.

*/s/ Michael W. Davidson*
Signature of Debtor

*/s/ Kevin D. Heard*
Kevin D. Heard
Attorney for Debtor

Of Counsel:
HEARD, ARY & DAURO, LLC
303 Williams Avenue
Park Plaza, Suite 921
Huntsville, Alabama 35801
Phone: (256) 535-0817
Fax: (256) 535-0818
kheard@heardlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November, 2018, I served a copy of the foregoing **Debtor's Disclosure Statement Dated November 21, 2018,** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard M Blythe
Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov

Richard E O'Neal, on behalf of the IRS:
Richard.O'Neal@usdoj.gov

**Notice will not be electronically mailed to:**

**All parties on the attached matrix were served via U.S. Mail.**

*/s/ Kevin D. Heard*
Kevin D. Heard