## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| **Michael W. Davidson** | ) | |
| SSN: XXX-XX-3867 | ) | **CASE NO. 18-82270-CRJ11** |
| | ) | |
| **Debtor.** | ) | **CHAPTER 11** |
| ) | | |

### JOINT PLAN OF REORGANIZATION DATED AUGUST 30, 2019

Michael W. Davidson, as Debtor and Debtor-in-possession (the "Debtor") and The Estate of Julio Biora, Alejandro Rezzonico, Marina Rezzonico and Mariano Rezzonico (collectively "Biora Creditors"), as joint Plan Proponents (hereinafter Debtor and Biora Creditors are jointly referred to as "Plan Proponents"), hereby propose the following plan of liquidation pursuant to Section 1121(a) of Title 11 of the United States Code. The following are essential to a complete understanding and implementation of this Plan: (i) the Definitions contained in Article I below; and (ii) the Disclosure Statement dated August 30, 2019, which contains the Debtor's background, identifies assets to be liquidated, projections for future recoveries, a summary and analysis of this Plan and the amount ultimately distributed to Allowed Claims.

### ARTICLE I
### DEFINITIONS AND INTERPRETATION

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply. Each of the terms set forth herein shall have the meaning ascribed to such term by the Plan and such meaning shall be equally applicable to the singular and plural forms of the terms so defined. All definitions are, and shall be, regarded as integral, substantive and operative provisions of the Plan.

#### DEFINITIONS.

**1.1 "Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of this Chapter 11 Case allowed under Sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's Estate, any indebtedness or obligations incurred or assumed by the Debtor as Debtor in possession, any costs, expenses, and attorney's fees incurred by counsel for the Debtor as allowed by the Bankruptcy Court,

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document    Page 1 of 21

any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Section 1930 of Chapter 123 of Title 28 of the United States Code.

1.2 "**Administrative Expense Claim Bar Date**" has the meaning set forth in Section 2.3 of Article II.

1.3 "**Allowed**" means, with reference to any Claim or Interest, (i) any Claim or Interest that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, and that is not otherwise Disputed, (ii) any timely filed Claim or Interest as to which no objection to allowance has been made or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim or Interest expressly allowed by a Final Order or hereunder.

1.4 "**Allowed Amount**" when referring to a Claim means the amount Allowed.

1.5 "**Available Funds**" means the amount of Cash held by the Debtor available to be distributed to holders of Allowed Claims, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and the fees and expenses of the Debtor, and his professionals, including, but not limited to, the proceeds of the liquidation of the assets of the Debtor or the Estate, which also includes the recoveries and proceeds of Causes of Action and Avoidance Actions.

1.6 "**Avoidance Action**" means any claim, action or cause of action of the Debtor or the Estate, or either of them, that is or may be the subject of an adversary proceeding or contested matter under Sections 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, or pursuant to any similar or related state or federal statutes or common law (including fraudulent transfer laws) whether or not litigation has been commenced as of the Confirmation Date to prosecute such claim, action, or cause of action.

1.7 "**Bankruptcy Code**" means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

1.8 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Alabama, having jurisdiction over this Chapter 11 Case.

1.9 "**Bankruptcy Court Fees**" means the quarterly fees assessed in the Chapter 11 Case pursuant to 28 U.S.C. § 1930(a)(7).

1.10     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time to time, applicable to this Chapter 11 Case, and any Local Rules of the United States Bankruptcy Court for the Northern District of Alabama

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document      Page 2 of 21

applicable to this Chapter 11 case.

**1.11** "**Business Day**" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in Huntsville, Alabama are required or authorized to close by law or executive order.

**1.12** "**Bar Date**" means October 26, 2018, the date by which proofs of Claim must be filed with the Bankruptcy Court.

**1.13** "**Case**" means this Chapter 11 Case.

**1.14** "**Cash**" means legal tender of the United States of America.

**1.15** "**Causes of Action**" means all claims and causes of action held by the Estate immediately prior to the Effective Date, including, but not limited to, any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, whether arising under any contract or under the Bankruptcy Code or other federal, state or other non-bankruptcy law, including, without limitation, any causes of action set forth in this Plan or Disclosure Statement and any Exhibits thereto and all Avoidance Actions, but excluding claims and causes of action and related recoveries specifically and expressly released, exculpated or waived pursuant to this Plan.

**1.16** "**Chapter 11 Case**" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Commencement Date, styled *In re Michael W. Davidson*, Case No. 18-82270-CRJ11.

**1.17** "**Claim**" has the meaning set forth in Section 101 of the Bankruptcy Code.

**1.18** "**Class**" means any group of Claims or Equity Interest(s) classified by the Plan pursuant to Section 1122(a) of the Bankruptcy Code.

**1.19** "**Collateral**" means any property or interest in property of the Estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.20** "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.21** "**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.22** "**Confirmation Order**" " means the Final Non-Appealable Order of the Court determining that the Plan meets the requirements of the Bankruptcy Code and is entitled to confirmation.

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document    Page 3 of 21

**1.23** **"Court"** means the Bankruptcy Court.

**1.24** **"Debtor"** means Michael W. Davidson.

**1.25** **"Disclosure Statement"** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.26** **"Disputed"** means, with respect to any Claim or Interest that has not been Allowed pursuant to the Plan or a Final Order,

(a) if no proof of claim has been filed by the applicable deadline: (i) a Claim or Interest that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim or Interest that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b) if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim or Interest for which no corresponding Claim or Interest has been or hereafter is listed on the Schedules; (ii) a Claim or Interest for which a corresponding Claim or Interest has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or Interest as asserted in the proof of claim varies from the nature and amount of such Claim or Interest as listed on the Schedules; (iii) a Claim or Interest for which a corresponding Claim or Interest has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim or Interest for which a timely objection or request for estimation is interposed which has not been withdrawn or determined by a Final Order.

**1.27** **"Distribution"** means cash required under the Plan to be distributed to the holders of Allowed Claims account of an Allowed Claim or as otherwise allowed by Bankruptcy Court Order.

**1.28** **"Effective Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.29** **"Estate"** has the meaning set forth in Section 541 of the Bankruptcy Code.

**1.30** **"Final Distribution"** has the meaning set forth in Section 7.8 of Article VII.

**1.31** **"Final Order"** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in this Chapter 11 Case which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been

Case 18-82270-CRJ11   Doc 200   Filed 08/30/19   Entered 08/30/19 16:55:39   Desc
Main Document    Page 4 of 21

denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired.

1.32 "**General Unsecured Claim**" means any Claim against the Debtor that (i) is not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

1.33 "**Impaired**" has the meaning set forth in Section 1124 of the Bankruptcy Code.

1.34 "**Insider**" has the meaning set forth in Section 101 of the Bankruptcy Code.

1.35 "**Initial Distribution**" has the meaning set forth in Section 7.3 of Article VII.

1.36 "**Interim Distributions**" have the meaning set forth in Section 7.4 of Article VII.

1.37 "**Lien**" means any charge against, security interest in, encumbrance upon or other interest in property to secure payment of a debt or performance of an obligation.

1.38 "**Person**" has the meaning set forth in Section 101(41) of the Bankruptcy Code.

1.39 "**Petition Date**" means July 31, 2018, the date upon which the chapter 11 petition of Debtor was Filed with the Bankruptcy Court.

1.40 "**Plan**" means this liquidating Chapter 11 plan of reorganization, including all exhibits, appendixes, and supplements hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.41 "**Plan Distribution Account**" means the bank account into which all funds from the administration or liquidation of properties of the estate shall be deposited.

1.42 "**Plan Proponents**" means the Debtor and the Biora Creditors.

1.43 "**Priority Non-Tax Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.44 "**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc Main Document    Page 5 of 21

**1.45** "**Pro Rata**" means proportionally, so that with respect to an Allowed Claim, the ratio of the amount of property distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is equal to the ratio of the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Claims in that Class (including Disputed Claims until disallowed).

**1.46** "**Professional Fee Claims**" has the meaning set forth in Section 2.2 of Article II.

**1.47** "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.48** "**Secured Claim**" means a Claim (i) secured by Collateral, to the extent of the value of such Collateral: (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Plan Proponents, or (c) as determined by a Final Order in accordance with Section 506(a) of the Bankruptcy Code; or (ii) secured by the amount of any rights of setoff of the holder thereof under Section 553 of the Bankruptcy Code.

**1.49** "**Biora Creditors**" means The Estate of Julio Biora, Alejandro Rezzonico, Marina Rezzonico and Mariano Rezzonico.

**1.50** "**Tax Code**" means Title 26 of the United States Code, as amended from time to time.

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document    Page 6 of 21

# ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1** **Administrative Expense Claims.** Except to the extent the Plan Proponents and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, each holder of an Administrative Expense Claim shall be paid, in full satisfaction of such Claim, an amount in Cash equal to the amount of such Administrative Expense Claim approved by the Court on the earlier of the date of entry of the order approving such Administrative Expense Claim or the Effective Date, or as soon thereafter as is reasonably practicable. Without limitation, all quarterly fees assessed under 28 U.S.C. § 1930(a)(7) shall be paid on the Effective Date, or as soon thereafter as reasonably practicable, and as they come due thereafter.

**2.2** **Compensation and Reimbursement Claims.** All Claims for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code ("Professional Fee Claims") shall be paid in full in the amount approved by the Bankruptcy Court on the earlier of the date of entry of the order approving such Professional Fee Claim, the Effective Date, or as soon as is reasonably practicable thereafter from funds generated by the liquidation of assets pursuant to this Plan and administered by the Debtor. The entry of a Final Order approving a Professional Fee Claim shall constitute a release of any and all claims against such claimant relating to the subject matter of the services rendered. Presently, the Debtor estimate that the amount of accrued but unpaid Administrative Claims for Professional Fees that are owed Heard Ary & Dauro are $13,300 .

**2.3** **Administrative Expense Claim Bar Date.** All persons and entities seeking an allowance of or reimbursement for an Administrative Expense Claim or a Professional Fee Claim shall file their respective final applications by the date that is thirty (30) days after the Confirmation Date (the "Administrative Expense Claim Bar Date") or forever be barred from so doing.

# ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan designates the following classes of Claims and Interests, other than Administrative Claims, for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impaired/Unimpaired if Allowed | Entitled to Vote if Allowed |
|-------|-------------|-------------------------------|----------------------------|
| Class 1.1 Secured | Redstone Federal Credit Union | Impaired | Yes |
| Class 1.2 Secured | Lincoln Automotive Financial Services | Impaired | Yes |
| Class 2 | General Unsecured Claims | Impaired | Yes |
| Class 3 | Interest Holder – Mike Davidson | Impaired | Yes |

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document    Page 7 of 21

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Unless such holder agrees to other treatment (in which event, such other agreement shall govern), each holder of an Allowed Class 1 Claim shall be treated as follows:

**4.1    Secured Claims:**

    **4.01    Redstone Federal Credit Union**: Class 1.1 consists of the Allowed Secured Claim of Redstone Federal Credit Union ("RCFU") in the amount of $142,565.41 and is impaired.  The Debtor is indebted to RCFU pursuant to a note and mortgage on real property located at 130 Shady Lane Langston, Alabama.  The Debtor owns a one-half interest in this property. Debtor proposes to settle and satisfy this claim through monthly payments in the amount of $1,000 which payments include interest at the contract rate of interest.  This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

    **4.02    Lincoln Automotive Financial Services**: Class 1.2 consists of the Allowed Secured Claim in the amount of $57,970 held by Lincoln Automotive Financial Services ("Lincoln"), which is impaired.   The Debtor is indebted to Lincoln pursuant to a vehicle loan for a 2017 Lincoln Navigator.  Post-petition this Court approved the Debtor's monthly payment to Lincoln in the amount of $1,017.03 beginning in August, 2018 [Doc. 48].  This payment includes interest at the contract rate of 0.00%.  Debtor will continue to pay this debt pursuant to the terms of this Court's prior Order until the debt is paid in full.  Debtor estimates that the payment period is approximately 52 months.  Alternatively, the Debtor reserves the right to sell this vehicle for fair market value and satisfy this claim.  Any excess proceeds would be paid to Allowed Claim holders of Class 2.    This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**4.2    Non-Priority General Unsecured Claims**: Class 2 consists of all Allowed general unsecured claims which are impaired.  The total amount of unsecured claims exceeds $1,948,730.  The claims are of every kind and nature including claims arising from personal guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims, unsecured tax claims, and damages arising from or related to any liquidated or contingent claim.  It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court.  Holders of general unsecured claims without priority which are Allowed Claims as determined on or before the Effective Date of the Plan shall be paid on a pro-rata distribution, from the pool of funds created from the sale of the Debtor's assets.  Allowed claim holders in this class will receive 71.84% of their Allowed Claim from funds available for distribution from the liquidation of Assets.  The method through which payment shall be made to Allowed Claim holders in this Class is discussed in the Implementation Section.

    **4.3    Interest Holder.**

Class 3 consists of the Claim of Michael W. Davidson as the Debtor and Debtor in Possession.  The Debtor is not retaining any assets or property above his exemptions as allowed

under federal and state law. Claims in this class are Impaired under this Plan. Therefore, pursuant to Section 1126(a) of the Bankruptcy Code, the holders of Class 3 Claims are entitled to vote to accept or reject this Plan.

## ARTICLE V
## VOTING OF CLAIMS

**5.1** **Voting of Claims**. Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote to accept or reject this Plan. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

**5.2** **Acceptance by a Class of Creditors**. Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided for in Section 1126(e) of the Bankruptcy Code, a Class of Claims or Interests shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims or Interests of such Class that have timely and properly voted to accept or reject this Plan.

**5.3** **Presumed Acceptance of Plan**. All Classes of Claims that are designated as unimpaired under this Plan are presumed to accept the Plan. Nonetheless, the Plan proposes that all Classes of Claims also shall be permitted to vote on the Plan, based upon the possibility that one or more Classes of Claims ultimately is determined to be Impaired. There are no unimpaired classes proposed in the Plan.

**5.4** **Cram Down**. In the event one or more Classes of Claims entitled to vote on the Plan votes to reject the Plan, the Plan Proponents shall utilize the "cram down" provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan.

## ARTICLE VI
## THE IMPLEMENTATION OF THE PLAN

**6.1** **Implementation**. This Plan will be implemented through the sale of the assets shown in the chart below in order to create a pool of funds from which to make payment to holders of Allowed Claims. On or before the Effective Date of the Plan the Debtor shall list for sale or refinance the following real properties. The sales or refinance is expected to generate close to the Equity value shown below. The method of sale includes sale by private or public sale through a licensed realtor. The process of each sale involves the valuation of each property to ensure that the property is being sold for the highest attainable price. The time within which all sales are to be completed is unknown at this point.

| Asset | Value | Lien | Equity |
|---|---|---|---|
| 2808/2828 Old RR Bed Rd. Harvest, AL  (50% interest) | $500,000 | $400,000 | $100,000 |

| | | | |
|---|---|---|---|
| 130 Shady Lane<br>Langston, AL | $500,000 | $142,565 | $357,435 |
| 53 Evans Drive<br>Langston, AL | $75,000 | $0 | $75,000 |
| 895 Co. Rd. 614<br>Mentone, AL | $300,000 | $0 | $300,000 |
| 178 Walton Lakeshore Dr.<br>Panama City, FL | $3,500 | $0 | $3,500 |

The Debtor owns a 50% interest in these properties. The other 50% is owned by Dean Hudson. However, the interests of both the Debtor and Mr. Hudson are being sold and or refinanced and those proceeds are being used to fund obligations under this Plan. With respect to the property in Harvest, while the Debtor is not obligated on this debt he has previously mortgaged his one-half interest in this property to both Redstone Federal Credit Union (RCFU) and CB&S Bank. Dean Hudson is the actual obligor on the indebtedness owed to both these institutions. The debt owed to RFCU is approximately $3,000 which has been drawn on the equity line of credit. The Debt owed to CB&S is approximately $397,000. In this process, Mr. Hudson will assume the entire indebtedness that is owed on the Harvest property which he alone is paying even though the debt was incurred for joint purposes.

The Debtor estimates that the sale or refinance of the Mentone and Harvest properties would take place in approximately 60 days from the Effective Date of the Plan. The sale proceeds would be deposited into the DIP account and used to pay Allowed Claims. The Debtor has already sold one commercial tract of land with the Bankruptcy Court's approval and deposited those proceeds in the DIP bank account. The proceeds held in the DIP account, less allowed Administrative Expenses, as well as the proceeds from the sale Debtor's interest in his remaining properties constitute the "pot" from which payments will be made to Allowed Claim holders.

The Plan further provides that the Debtor make adequate protection payments to RFCU which holds a mortgage on the Property at 130 Shady Lane during the period of time that this property is being marketed and sold. The Debtor will also sell his interest in the real property in Panama City, Florida for fair market value within 12 months from the Effective Date of the Plan.

The Debtor also owns certain personal property shown on Schedule __ to the Disclosure Statement. The total value of this personal property is $43,235. The Debtor however, is entitled to exempt $7,500 of value in this personal property. Consequently, the actual amount of value being contributed towards the payment of Allowed Claims from this personal property is approximately $35,735.

### 6.2    Implementation of the Plan as to Biora Creditors.

The Biora Creditors have filed a proof of claim in the amount of $1,948,730.05 which is an Allowed General Unsecured Claim. The Biora Creditors will be paid $1,400,000 in full satisfaction of this claim as follows:

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc<br>Main Document      Page 10 of 21

a)  $650,000 to be paid in approximately 90 from June 28, 2019 from funds already in the DIP account or generated through the liquidation or refinance of properties identified above.

b) The sum of $650,000 will be paid within approximately 180 days from June 28, 2019 also from funds already in the DIP account or generated through the liquidation or refinance of properties identified above.

c) Should the liquidation or refinance of the properties identified above not be sufficient to meet a and b, then such additional sums will be paid by Dean Hudson pursuant to the Settlement Agreement attached hereto and are incorporated herein by reference.

d) The remaining $100,000.00 is to be paid in two equal $50,000 installments due no later than July 1, 2020 and July 1, 2021, and secured by a first or second mortgage on the Harvest, Mentone and Langston properties and lien on Hudson's retirement account.

e)  Hudson has also paid the Biora Creditors the sum of $57,000 which will be credited against the 1.4 Million.

f) Upon confirmation of the Plan, the Parties will also file a judgment in the adversary proceeding providing for the entry of a non-dischargeable judgment against Davidson in the amount of 1,400,000 under §523 of the Bankruptcy Code. This judgment shall also resolve the fraudulent transfer claims asserted against Dean Hudson. The judgment shall be satisfied according to the terms of this Plan and the treatment of the Biora Creditors Allowed Unsecured Claim.

f)   There are additional non-monetary settlement terms that are essential to the settlement between the Biora Creditors and the Debtor. Those terms are explained in the Settlement Agreement attached hereto and are incorporated herein by reference.

**6.3**     **Post-Confirmation Reports and Fees**.  All accrued and unpaid fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court on the Confirmation Date, will be paid on the Effective Date. Subsequent to the Effective Date,  the Debtor shall also be responsible for the filing of all post-confirmation reports with the Bankruptcy Administrator and for arranging for payment from the Plan Administration Account of all post-confirmation fees charged or assessed against the Estate pursuant to 28 U.S.C. § 1930.

**6.4**     **Post-Confirmation Fees, Compensation, Costs, and Expenses**.  Subject to Court approval, the Debtor shall cause to be paid from the DIP Account all fees, costs, and expenses related to the implementation of the Plan, including without, limitation, the fees and expenses of the professionals.  All retained professionals of the Estate may apply to the Court for the entry of a compensation procedures order similar to the Court's Order Approving Procedures for Payment of Interim Compensation of Professionals entered February 5, 2019 [Docket No. 94],

such that the fees and expenses may be paid monthly or on such schedule as the Court may establish.

      **6.5**    <u>**Compliance with Tax Requirements**</u>.  The Debtor shall comply with all reporting requirements imposed by federal, state or local taxing authorities in connection with the sale of assets pursuant to this Plan and shall be authorized to take any and all action necessary and appropriate to comply with such requirements.  Also, as a condition to making any Distribution under this Plan, the Debtor may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting laws. Notwithstanding any other provision of this Plan, each entity receiving a Distribution of Cash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

      **6.6**    <u>**Information**</u>.  The Debtor shall provide the Biora Estate and the Bankruptcy Administrator such information as they may reasonably request and in a timely manner. Information may be provided informally, such as by e-mail, or in the form of a quarterly or annual report.

      **6.7**    <u>**Authority**</u>.  The Confirmation Order shall constitute full and complete authority for the Plan Proponents to take all other actions that may be necessary, useful or appropriate to consummate this Plan without any further corporate or judicial authority, except as otherwise provided by the Plan or the Confirmation Order.

## ARTICLE VII
## PROVISIONS GOVERNING MANNER OF DISTRIBUTIONS

      **7.1**    <u>**Distribution Schedules**</u>.  As part of the Plan, the Plan Proponents, shall prepare schedules of Distributions with respect to each Class of Claims and Interests. Copies of the Distribution Schedules shall be made available, upon request, to any party in interest, in electronic form.

      **7.2**    <u>**Reliance on Schedules and Claims Register**</u>.  In making Distributions under this Plan, the Debtor may rely upon the Schedules and the claims register maintained by the Bankruptcy Court as such claims register may be modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

      **7.3**    <u>**Initial Distribution.**</u>  Not later than 90 days from the Effective Date, the Plan Proponents shall make an initial Distribution (the "Initial Distribution") of Cash to holders of Allowed Claims, in the order of their priority.

      **7.4**    <u>**Interim Distributions.**</u>  Depending on the sufficiency of Available Funds, and the administrative cost associated therewith, the Plan Proponents may make interim distributions ("Interim Distributions") from the DIP account to Allowed Claim holders, in order of their priority.

Case 18-82270-CRJ11   Doc 200   Filed 08/30/19   Entered 08/30/19 16:55:39   Desc
Main Document    Page 12 of 21

**7.5     Final Distribution.**  Upon the resolution of all contingencies and the repayment in full of all compensation, costs, and expenses, all taxes, and other costs and expenses associated with the performance or completion of performance under the Plan, Plan Proponents shall make a final Distribution (the "Final Distribution") of Cash to holders of Allowed Claims, in the order of their priority. The Final Distribution shall be made in the same order as the Initial Distribution and the Interim Distribution such that all Allowed Claims are paid.

**7.8     Distributions of Cash.**  Any Cash payment to be made hereunder may be made by check or wire transfer.

**7.9     Delivery of Distributions and Undeliverable Distributions.**     Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or their agents or in a letter of transmittal unless the Debtor, prior to the Effective Date, has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any Distribution to any holder is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made. Thereafter, any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Debtor and property of the Estate.

**7.10     Time Bar to Cash Payments.**  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Debtor only by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the 90 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the funds available for Distribution under the Plan and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Estate, the Debtor, and his property.

**7.11     Transactions on Business Days**.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**7.12     Other Payments.** This Article relates to the timing of Distributions with respect to Classes of Claims. All other Claims, fees, and expenses due to be paid under the Plan shall be timely paid in the manner provided in the applicable provisions of the Plan.

**ARTICLE VIII**
**PROCEDURES FOR DISPUTED CLAIMS**

**8.1** **Objections to Claims**. Objection to claims may be filed by either the Debtor or the Biora Creditors. All objections to Claims shall be served and filed on or before the later of: (i) 30 days after the Confirmation Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

**8.2** **No Distribution Pending Allowance**. Except as otherwise authorized and directed by the Court, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. Until such time, the Plan Proponents shall withhold from the property to be distributed to holders of such Claim the portion of such property allocable to such Claim, pending disposition of such claim by the Bankruptcy Court.

**8.3** **Allowance of Disputed Claims.** If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Plan Proponents shall, on or before twenty-one (21) calendar days following the day in which the Disputed Claim becomes an Allowed Claim, distribute to the holder thereof the Distribution that such holder would have received had its Claim been Allowed on the Effective Date.

**8.4** **Tax Reporting and Compliance.** The Debtor is hereby authorized to request an expedited determination under Section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1** **Executory Contracts and Unexpired Leases**. On the Effective Date, all executory contracts and unexpired leases to which the Debtor are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under Section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

## ARTICLE X
## EFFECTIVENESS OF THE PLAN

**10.1** **Conditions Precedent to Confirmation of Plan**. The following are conditions precedent to the occurrence of the Confirmation Date: (a) The entry of a Final Order finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code which order shall be in form and substance reasonably satisfactory to the Plan Proponents; (b) The proposed Confirmation Order shall be, in form and substance, reasonably acceptable to the Plan Proponents; and (c) All provisions, terms and conditions of this Plan are approved in the Confirmation Order.

## ARTICLE XI
## EFFECT OF CONFIRMATION AND RETENTION OF JURISDICTION

**11.1** **Binding Effect**. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor and every holder of a Claim against the Debtor, whether or not the Claim of such holder is impaired under the Plan and whether or not such Claim holder has accepted the Plan.

**11.2** **Full and Final Satisfaction**. The treatment of Claims provided in this Plan shall be in full and final satisfaction and settlement of all Claims against the Estate and the Debtor. Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and liabilities against the Estate arising on or before the Effective Date, including any liabilities accrued after the Filing Date.

**11.3 Discharge**. Upon substantial consummation and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtor shall receive a discharge of any and all debts of the Debtor that arose at any time before Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 1141(d)(1) and (d)(5) of the Code **excluding, however,** the debt owed by Debtor to the Biora Creditors, which debt is non-dischargeable under §523 of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefore was filed, whether the Claim is an allowed claim, whether the claim is properly scheduled or whether the holder thereof votes to accept the Plan. The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtor or their assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.

**11.4** **INJUNCTION.** EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND AFTER THE EFFECTIVE DATE ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTOR ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR OR THEIR ESTATE, OR ANY OF THEIR PROPERTIES ON ACCOUNT OF ANY SUCH CLAIMS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN, PROVIDED HOWEVER, THAT NOTHING CONTAINED IN THIS PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.

**11.5** **Tax Injunction.** In accordance with Section 346 of the Bankruptcy Code for purposes of any state or local law imposing a tax, income will not be realized by the Debtor or by

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document      Page 15 of 21

reason of forgiveness or discharge of indebtedness resulting from the Case. As a result, each state or local taxing authority is permanently enjoined and restrained, after the Confirmation Date, from commencing, continuing or taking any act to impose, collect or recover in any manner any tax against the Debtor arising by reason of the forgiveness or discharge of any such tax under this Plan. Notwithstanding any other provision of this Plan, each Person or entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the payment and satisfaction of tax Claims or obligations imposed by any Governmental Unit on account of, arising out of or related to any such Distribution, including, without limitation, income and withholding taxes.

**11.6    Term of Injunctions or Stays.**  Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during this Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of this Chapter 11 Case.

**11.7    Injunction Against Interference with Plan.**  Upon the entry of the Confirmation Order, the Debtor, all holders of Claims, and all other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**11.8    Jurisdiction of Bankruptcy Court.**  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to this Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(b) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e) To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(f) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(g) To enter, implement, or enforce such orders as may be appropriate in the event the

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document       Page 16 of 21

Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(h) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i) To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j) To hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses;

(k) To recover all assets of the Debtor or property of the Estate, wherever located;

(l) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(n) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code; and

(o) To enter a final decree closing this Chapter l 1 Case.

### ARTICLE XII
### MISCELLANEOUS PROVISIONS

**12.1** **Substantial Consummation**. The Plan shall be deemed to be substantially consummated when the Debtor make the Initial Distribution.

**12.2** **Effectuating Documents and Further Transactions**. The Debtor is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to implement the Plan.

**12.3** **Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.4** **Modification of Plan.** Upon reasonable notice, the Plan may be amended,

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document      Page 17 of 21

modified, or supplemented by the Plan Proponents in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims under the Plan, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

**12.5** **Revocation or Withdrawal of Plan.** The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date for good cause shown. If the Plan Proponents take such action, subject to the conditions set forth above, the Plan shall he deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of any creditor or any other person in any further proceedings involving the Debtor.

**12.6** **Disputes Among Plan Proponents.** In the event of a disagreement or dispute between or among the Plan Proponents, or any of them, regarding an action that shall or may be taken, or a document that shall or may be filed, pursuant to the Plan, a Plan Proponent may apply to the Bankruptcy Court for an Order authorizing such action to be taken, or document to be filed, on behalf of the Plan Proponents.

**12.7** **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.8** **Severability.** If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.9** **Governing Law.** Except to the extent the Bankruptcy Code or other federal or state law is applicable, or as otherwise specifically set forth herein, the rights, duties, and

Case 18-82270-CRJ11    Doc 200    Filed 08/30/19    Entered 08/30/19 16:55:39    Desc
Main Document    Page 18 of 21

obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

**12.10   Exhibits.**  All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.11   Successors and Assigns.**  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such person.

**12.12   Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.13   Standing.**  Any creditor or party in interest may appear and be heard on any issue in this Case.

**12.14   Notice.**  Any notice required to be given pursuant to the terms of this Plan shall be given to the following addresses by first class mail and electronic mail.

If to the Debtor:

> Michael W. Davidson
> c/o Kevin D. Heard, Esq.
> Heard, Ary & Dauro, LLC
> 303 Williams Avenue SW, Suite 921
> Huntsville, Alabama 35801
> kheard@heardlaw.com

If to the Biora Creditors:

> Gregory H. Revera
> Revera Law Firm, LLC
> 120 Holmes Ave. NE, Ste 303
> Huntsville, Alabama 35801
> reveralaw@gmail.com

Respectfully submitted on this 30th  day of August, 2019.

*/s/Michael W. Davidson*
Michael W. Davidson


*/s/ Kevin D. Heard*
Kevin D. Heard
Attorney for Debtor

Of counsel:
HEARD, ARY & DAURO, LLC
303 Williams Avenue
Park Plaza, Suite 921
Huntsville, Alabama 35801
Phone: (256) 535-0817
kheard@heardlaw.com


                                        /s/Gregory H. Revera
                                        Gregory H. Revera
                                        Attorney for the Biora Creditors

Of counsel:
Revera Law Firm
120 Holmes Ave. Ste 303
Huntsville, Alabama 35801
Phone: (256)217-4554
reveralaw@gmail.com


## CERTIFICATE OF SERVICE

        I hereby certify that on the 30th day of August, 2019, I served a copy of the foregoing **Joint Plan of Reorganization Dated August 30, 2019** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard M Blythe Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov

Jeffrey L Cook jcook7117@yahoo.com

Kevin C Gray kgray@bradley.com, kevingray671@gmail.com; ttatum@bradley.com, mpressley@bradley.com

William H Hancock bankruptcy@wolfejones.com, wmhancock@wolfejones.com

Gregory H Revera reveralaw@gmail.com

John Jeffery Rich jrich@madisoncountyal.gov

S Dagnal Rowe drowe@wilmerlee.com, dbranche@wilmerlee.com

Andrew J Shaver ashaver@bradley.com

**<u>Notice will not be electronically mailed to:</u>**

**All parties on the attached matrix were served via U.S. Mail.**

*/s/ Kevin D. Heard*

KEVIN D. HEARD